Sean P. Killeen, SBN 320644
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone:  415.659.2600
Facsimile:  415.659.2601
Email:      skilleen@bakerlaw.com

Matthew D. Pearson, SBN 294302
WOMBLE BOND DICKINSON
400 Spectrum Center Drive, Suite 1700
Irvine, CA 92618
Telephone:  714.557.3800
Facsimile:  714.557.3347
Email:      matthew.pearson@wbd-us.com

*Attorneys for Plaintiff*
JANIE & JACK LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANIE & JACK LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>Diana Abbasi, and 2,407 Additional Purported Clients of Zimmerman Reed,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

1

2     Plaintiff Janie & Jack LLC ("J&J") hereby file this complaint against 2,408

3  individuals (collectively, "Claimants") (1) who claim to be represented by

4  Zimmerman Reed LLP; (2) who claim to have visited J&J's website,

5  www.janieandjack.com ("Site"); and (3) who have filed with the American

6  Arbitration Association ("AAA") individual arbitration demands based solely on

7  those purported visits.  By way of this Complaint, J&J seeks an order from the

8  Court declaring that none of the Claimants entered into an arbitration agreement

9  with J&J simply by visiting the Site and enjoining Claimants from further trying to

10  compel their claims to arbitration.

11                        **JURISDICTION AND VENUE**

12     1.     This Court has jurisdiction over this declaratory judgment action

13  because "the underlying claims to be arbitrated…arise from federal law." *Hourigan*

14  *v. Redgrave LLP*, No. 22-CV-04303-LB, 2022 WL 17082374, at *7 (N.D. Cal.

15  Nov. 18, 2022).  Specifically, in the 2,408 Arbitration Demands submitted by

16  Claimants, Claimants assert claims for violation of "the Wiretap Act, 18 USC

17  §2510 *et seq*." *Bryfogle v. Livingston, No*. CV-21-00546-TUC-RCC, 2022 WL

18  2238182, at *4 (D. Ariz. June 22, 2022) ("28 U.S.C. § 1331 grants district courts

19  original jurisdiction over civil actions arising under federal laws, like § 2520 of the

20  Wiretap Act."). As to any of the Claimants' other claims, the Court has

21  supplemental jurisdiction over them.  *Martinez v. Blu Prods., Inc*., No. CV 17-

22  2507-GW(AGRX), 2019 WL 12817014, at *1 (C.D. Cal. Aug. 19, 2019) ("Subject

23  matter jurisdiction is predicated on…federal question jurisdiction in light of the

24  first two claims for relief," which include a claim for "violation of the Federal

25  Wiretap Act Title I of the Electronic Communications Privacy Act, 18 U.S.C. §

26  2510 et seq.," "with supplemental jurisdiction over the remainder of the claims.").

27     2.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1)-(2)

28  because J&J's principal place of business is located in this district, a substantial part

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of the events or omissions giving rise to the claims occurred in this district, and on information and belief, Claimants overwhelmingly reside in the State of California, and for those who do not, they are asserting or threatening arbitration claims under California law for "violations…[that] occurred in material part in and from California."

## PARTIES

3.    J&J is a California limited liability company with its principal place of business in San Francisco, California.

4.    Claimants are 2,408 individuals who Zimmerman Reed LLP purports to represent and who have all filed against J&J Demands for Arbitration based on their alleged "agreement" to J&J's Site's Terms of Use ("Terms").  A full list of the 2,408 Claimants is attached hereto as **Exhibit A.**

## NATURE OF THE ACTION

5.    Within the last twenty-four months, plaintiffs' counsel, including counsel for Claimants here, have taken to weaponizing arbitration agreements and, in doing so, have negated, entirely, the underlying purpose and benefits of arbitration—namely, cost effective, expedited resolution of disputes.

6.    This "weaponization" comes in the form of plaintiffs' counsel filing hundreds or, as is the case here, thousands of individual arbitrations on behalf of "clients" who, for the most part, have no relationship with the defendant business.

7.    The goal of these filings is not to reduce costs; it is to increase them.

8.    As an example, each individual Claimant seeks statutory damages of up to $10,000 under the Wiretap Act, 18 USC §2520(c)(2)(B).  But, as detailed below, based just on the *fees* associated with the arbitrations (and not including costs of defense), J&J is required to pay upwards of $11,000 *per arbitration*.  In other words, the cost to J&J for even having the opportunity to defend itself in the arbitration is greater than the cost of simply paying the Claimant the full $10,000 in statutory penalties claimed. In fact, if J&J were to pay just the fees associated with

COMPLAINT FOR DECLARATORY JUDGMENT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

all of the 2,408 arbitration demands, the cost to J&J would be nearly **$3.5 million**, which does not even take into consideration amounts ultimately paid to the Claimants, if any.

9.      On top of all of that, Claimants have no real argument that J&J's arbitration agreement even applies to their claims.  As explained below, the arbitration agreement only applies to "Disputes" with J&J, and "Disputes" only arise "out of or relate[] to" (1) "any transaction conducted on the Sites" or (2) "the breach, enforcement, interpretation, or validity of [the Terms] or any part of it." None of the 2,408 Claimants claims to have completed a "transaction" on J&J's website or claims that J&J breached the Terms.

10.      Put simply, there are two issues here: (1) the weaponization of J&J's arbitration agreement and (2) Claimants' specious claims in trying to invoke it. And these two issues do not even take into consideration that J&J is currently defending itself in a putative class action filed in the Superior Court of California, County of San Francisco (1) that was filed before Claimants filed their arbitration demands, (2) that is likewise based on technology installed on J&J's website, and (3) that asserts a violation of California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 claim, just as Claimants assert here.

11.      J&J should not be forced to incur millions of dollars in arbitration fees or, in the alternative, be forced to settle Claimants' claims where (1) no arbitration agreement even exists and (2) even if it did, no agreement to arbitrate Claimants' claims exists.

A.      <u>The Cost of Weaponized Arbitration</u>

12.      Per AAA's "Consumer Mass Arbitration and Mediation Fee Schedule," effective January 15, 2024, if "twenty-five (25) or more similar Demands for Arbitration…are filed against or on behalf of the same party or related parties" and if "representation of all parties is consistent or coordinated across cases," requirements that are always met in situations like these, the defendant is

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

immediately responsible for the $8,125 "Initiation Fee." [*See AAA's Consumer Mass Arbitration and Mediation Fee Schedule*, available at: https://www.adr.org/sites/default/files/Consumer_Mass_Arbitration_and_Mediation _Fee_Schedule.pdf (last visited: February 18, 2025) and attached hereto as **Exhibit B**.]

13.    The "Initiation Fee" "includes an administrative review of the filing, an administrative conference call with the AAA, and the appointment of a Process Arbitrator and/or a Global Mediator." [*Id.*]

14.    The "Initial Fee" "remain[s] due and payable in the event the cases are closed due to settlement, withdrawal or in the event that a Process Arbitrator makes a final determination that the AAA cannot proceed with the administration of the parties' mass arbitration." [*Id.*]

15.    In other words, just the act of a plaintiffs' counsel filing twenty-five (25) or more duplicative arbitration demands costs the defendant business $8,125.

16.    Assuming the "Process Arbitrator" determines that the AAA *can* proceed with the administration of mass arbitration, (i.e., accept the arbitrations and receive compensation for them), the defendant business is immediately responsible for additional fees, including:

a.    **The Per Case Fee:**  The Per Case Fee is a fee charged for each individual arbitration demand submitted by the plaintiffs' counsel.  The fees are charged on a sliding scale, with the amount of the Per Case Fee decreasing as the number of filed demands increase. For a breakdown of the Per Case Fees charged by AAA, please see below:

| First 500 Cases | Cases 501-1,500 | Cases 1,501–3,000 | Cases 3,001 and up |
|---|---|---|---|
| $325 | $250 | $175 | $100 |

[*Id.*]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

b.    **The Arbitrator Appointment Fee:**  The Arbitrator
Appointment fee is charged on a per-case basis, as well.  The
amount of the fee varies based on how the arbitrator is selected
(i.e., direct appointment vs. list and rank)

| Direct Appointment | List and Rank |
|---|---|
| $450 per case | $600 per case |

[*Id.*]

a.  **The Final Fee:**  The Final Fee is charged at the time an evidentiary
hearing is scheduled or the final submission date for documents-only
proceedings is set.

| Final Fee |
|---|
| $600 per case |

[*Id.*]

17.    These are solely the *fees* associated with arbitration.  They do not
include arbitrator compensation, which, per the AAA's "Consumer Mass
Arbitration and Mediation Fee Schedule," "shall" be paid by the "business."

18.    The table below details the amount in *fees* a business pays for every
arbitration filed, excluding the $8,125 Initiation Fee.

| Case No. | 1 – 500 | 501-1,500 | 1,501 – 3,000 | 3,001 and up |
|---|---|---|---|---|
| **Per Case Fee** | $325 | $250 | $175 | $100 |
| **List-and-Rank Appointment Fee** | $600 | $600 | $600 | $600 |
| **Final Fee** | $600 | $600 | $600 | $600 |

| Total Fees Per Case | $1,525 | $1,450 | $1,375 | $1,300 |
|---|---|---|---|---|

19.    Further, if one were to assume, conservatively, that the arbitrator in each case charged $500 per hour and spent 20 hours on each case, the per-case costs would increase by $10,000, as demonstrated below:

| Case No. | 1 – 500 | 501-1,500 | 1,501 – 3,000 | 3,001 and up |
|---|---|---|---|---|
| Total Amount Per Case | $11,525 | $11,450 | $11,375 | $11,300 |

20.    Obviously, whether and to what extent these fees are warranted depends on the amount in controversy for the claims asserted. For example, where each individual claimant seeks in excess of the total amount charged per arbitration, the fees and costs may be justified. But where, as here, the amount in controversy is significantly less than the fees and costs charged per arbitration, the fees and costs are not only not warranted, but they become leverage that a claimant can use to extract from the business an inflated settlement amount.

21.    This case is a perfect example of weaponized arbitration.

## FACTS OF THE CASE

A.    **J&J and Its Site**

22.    J&J designs, manufactures, and sells clothing for children. It does this both through brick-and-mortar stores and through its website, www.janieandjack.com.

23.    Use of J&J's site is, like nearly every consumer-facing website on the internet, governed by its Terms. A true and correct copy of J&J's applicable Terms are attached hereto as **Exhibit C.**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.   J&J makes its Terms publicly available by including in the footer of each page of the Site a link to the Terms, as show below:



25.   The Terms include myriad provisions but most relevant here is the Term's Arbitration Agreement.

26.   The first paragraph of the Arbitration Agreement reads, in full:

> "To the extent you cannot resolve any Dispute through the informal dispute resolution procedure described above, a Dispute shall be resolved through binding individual arbitration. You agree to give up your right to go to court to assert or defend your rights under this Agreement and with respect to any Dispute. You and Janie and Jack, LLC expressly delegate to the arbitrator the authority to determine the arbitrability of any Dispute, including the scope, applicability, validity, and enforceability of this arbitration provision."

[*See* J&J's Terms, **Exhibit C**, p. 6.]

27.   The Terms define a "Dispute" as: "any controversy, claim, action or dispute arising out of or related to any ***transaction conducted on the Sites***, or the breach, enforcement, interpretation, or validity of [the Terms] or any part of it[.]" [*Id.* (emphasis added).][1]

_____

[1] Although not at issue in this Declaratory Judgment Action, it is clear that none of the Claimants have alleged that they "transacted" on the Site, such that the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28.    Further, the Terms specifically state that the "Arbitration Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the Federal Arbitration Act." [*Id.*][2]

**B.    Claimants' Arbitration Demands**

**1.    Claimants' June 18, 2024 Letter**

29.    On June 18, 2024, Zimmerman Reed LLP sent a letter to J&J, which it titled "Pre-Filing Notice of Dispute / Confidential Settlement Communication" ("June 18, 2024 Letter").  A true and correct copy of the June 18, 2024 Letter is attached hereto as **Exhibit D**.

30.    In the June 18, 2024 Letter, Zimmerman Reed LLP stated that it wanted to inform J&J "of the potential legal claims that approximately 2,410 of [its] clients" (referred to herein as Claimants) "may present against" J&J.  Attached to the June 18, 2024 Letter as Exhibit A was a list of the first and last name of each of the alleged Claimants but nothing further.  [**Exhibit D** Ex. A.]

31.    Zimmerman Reed LLP went on to explain that each of the Claimants had, at some point in the last year, "interacted with [J&J's] website" and that their threatened claims against J&J "center around [J&J's] conduct in using" on the Site "certain website communication tracking software / embedded pixels supplied by and used in conjunction with certain third parties." [**Exhibit D**.]

32.    Put simply, Claimants asserted that, through the use of these alleged "website communication tracking software / embedded pixels," J&J or "one of the third parties [J&J] had agreements with" "intercept[ed], read[] and/or

---

Arbitration Agreement would even apply to them.  Each Claimant merely alleges that he or she "visited" the Site.
[2] The Central District of California has already held that where, as here, "Claimants have sought to compel arbitration based only on their theory that visiting the website is sufficient to come within the scope of the terms and conditions and trigger the arbitration agreement" and rely on the "dubious position that interacting with a website qualifies as a 'transaction' for purposes of the FAA, the terms and conditions do not 'evidence' that transaction," which, in turn, means that "the FAA does not apply...[and] Claimants Motion to Compel Arbitration fails." *L'Occitane, Inc. v. Zimmerman Reed LLP*, No. CV 24-1103 PA (RAOX), 2024 WL 2227182, at *4 (C.D. Cal. Apr. 12, 2024).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

record[ed]…Claimants' mouse movements, clicks, keystrokes, scrolls, pageviews, date, time and duration of visits, and/or other personal information while the communications [were] in transit" and, as a result, had (1) violated California's Invasion of Privacy Act ("CIPA"), § 631, California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.,* and California's Consumer Legal Remedy Act, Civ. Code § 1750, *et seq.*; (2) violated the federal Wiretap Act, 18 U.S.C. § 2510, *et seq* ("ECPA"); and (3) invaded their privacy.  [**Exhibit D**.]

33.    Claimants did not identify any actual damage that they suffered as a result of J&J's conduct except to state that they were each entitled to $5,000 in statutory damages under CIPA. [**Exhibit D**.]

**2.    J&J's July 24, 2024 Response**

34.    On July 24, 2024, J&J sent to Zimmerman Reed LLP its response to Claimant's June 18, 2024 letter ("July 24, 2024 Response"). A true and correct copy of the July 24, 2024 Response is attached hereto as **Exhibit E**.

35.    In the July 24, 2024 Response, J&J explained to Zimmerman Reed LLP the numerous ways in which the June 18, 2024 Letter was deficient, including, but not limited to, that:

a.    The Terms required that "the ***party*** asserting the Dispute shall first….provid[e] written notice to the other party," and that there was no "party" in the June 18, 2024 Letter but, instead, a list of names of people who "may present against" J&J "legal claims" without (1) addresses, (2) email addresses, (3) telephone numbers, (4) whether they have created an account with J&J, or even (5) when they visited the Site, if they ever did.

b.    The Terms required that the "party" include with its written notice of claim a description of "the facts and circumstances (including any relevant documentation) of the Dispute," which none of the Claimants did.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

c.    The Terms required that the "party" "try in good faith to settle such Dispute," which, by failing even to provide sufficient information for J&J to identify them (if possible), Claimants had failed to do.

[*See generally* **Exhibit E**.]

36.    Further, J&J explained to Zimmerman Reed LLP in its July 24, 2024 Response that the Arbitration Agreement did not apply to their CIPA claims. [**Exhibit E**.]

37.    Specifically, and as explained above, that Arbitration Agreement only applied to a "Dispute" between J&J and individuals, and Claimants' claims did not qualify as "Disputes." [**Exhibit E**.]

38.    The Terms defined "Dispute" as, and only as, "any controversy, claim, action or dispute arising out of or related to" (1) "any transaction conducted on the Sites" or (2) "the breach, enforcement, interpretation, or validity of this Agreement or any part of it." [**Exhibit E**.]

39.    In other words, even if Claimants had agreed to the Arbitration Agreement (they haven't), Claimant's claims would still not be subject to arbitration because none of the Claimants alleged that J&J had breached the Terms and because none of the Claimants alleged to have completed a "transaction" on the Site. [**Exhibit E**.]

### 3.    Claimants' August 2, 2024 Letter

40.    On August 2, 2024, Claimants responded to J&J's July 24, 2024 Response ("August 2, 2024 Letter"). A true and correct copy of the August 2, 2024 Letter is attached hereto as **Exhibit F**.

41.    In their August 2, 2024 Letter, Claimants did nothing to try to rectify the deficiencies J&J had identified and explained in its July 24, 2024 Response. [*See generally* **Exhibit F.**]

COMPLAINT FOR DECLARATORY JUDGMENT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

42.    Claimants did not provide any additional information that would allow J&J to identify them, let alone determine whether they ever actually "transacted" on the Site. [**Exhibit F.**]

43.    Claimants did not provide any explanation as to why they believed the Arbitration Agreement applied to them, stating instead that if "J&J's position is that none of the 2,410 Claimants' claims are subject to the arbitration clause in J&J's Terms of Use and there is no agreement to arbitrate, we will consider our options as to available forums to present the claims." [**Exhibit F.**]

44.    As explained below, however, it is clear that neither Zimmerman Reed LLP nor Claimants ever considered any other "available forums to present the claims." [**Exhibit F.**]

**4.    Claimants File 2,408 Individual Arbitration Demands**

45.    On September 20, 2024, Zimmerman Reed filed with the AAA "Demands for Arbitration on behalf of 2,408 Claimants with Exhibit A" and a "copy of the common Arbitration Agreement (found in [J&J's] Terms of Use) between all 2,408 Claimants and [J&J]."  The Terms of Use attached to each of the Claimant's Demands for Arbitration are the same Terms attached as **Exhibit C** here.

46.    All of the 2,408 Demands for Arbitration included the exact same explanation of the "claims."

47.    None of the 2,408 Arbitration Demands identified the date on which any Claimant allegedly visited the Site.

48.    None of the 2,408 Arbitration Demands alleged that the Claimant on whose behalf it was being filed actually "transacted" on the Site.

49.    None of the 2,408 Arbitration Demands attached any documents sufficient to show the existence of a valid arbitration agreement with J&J.  *See Wallrich v. Samsung Elecs. Am., Inc*., 106 F.4th 609, 619 (7th Cir. 2024) ("[C]opies

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of Samsung's terms and conditions and the spreadsheet containing the consumers' names and addresses are…*insufficient*."

50.    None of the 2,408 Arbitration Demands attached any documents sufficient to show the existence of a contract evidencing a transaction involving commerce, a requirement for the application of the FAA in the first place. *L'Occitane, Inc. v. Zimmerman Reed LLP*, No. CV 24-1103 PA (RAOX), 2024 WL 2227182, at *2 (C.D. Cal. Apr. 12, 2024) ("[T]hough the terms and conditions might be a 'contract,' and neither party disputes that the website effects 'commerce,' the terms and conditions do not memorialize or in any other way confirm that a transaction occurred."). A sample of 5 of the 2,408 Arbitration Demands, as well as the Exhibit A attached to the 2408 Arbitration Demands, are collectively attached hereto as **Exhibit G.**

**5.    AAA Demands Payment**

51.    On October 14, 2024, AAA sent to J&J an invoice for $8,425 encompassing J&J's "Initiation Fee" and "Expedited Clause Review Fee" for Claimant's Arbitration Demands.

52.    Because none of the 2,408 Claimants had yet to provide any information supporting their claim that the Arbitration Agreement applied to them, J&J declined to pay these fees, and, on November 20, 2024, AAA issued a letter stating that AAA was "declining to administer these 2,408 cases."

**6.    Claimants' Post-Closure Communications**

53.    Since the AAA declined to administer the 2,408 Arbitration Demands, Zimmerman Reed LLP has threatened to file complaints on each of their purported clients' behalf and, thereafter, seek to compel arbitration under the Terms.

54.    Therefore, J&J is stuck in the unenviable position of either arbitrating these claims and incurring the extraordinary fees associated with same (as outlined in paragraph 50 below) or opposing motions to compel arbitration in up to 2,408 individual lawsuits.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

55.    Just the fees associated with arbitrating against all 2,408 Claimants are astronomical:

| Case No. | 1 – 500 | 501-1,500 | 1,501–3,000 |
|---|---|---|---|
| **Total Fees Per Case** | $1,525 | $1,450 | $1,375 |
| **Number of Cases** | 500 | 1,000 | 908 |
| **Total per Category:** | $762,500 | $1,450,000 | $1,248,500 |
| **Total Fees for all 2,408 Arbitrations** | $3,461,000 | | |

56.    And the cost of opposing 2,408 motions to compel is comparable.

57.    To avoid these costs and to avoid burdening the Court with having to decide 2,408 individual motions to compel, J&J has decided to file this Declaratory Judgment Action, seeking from the Court an adjudication of whether any of the Claimants can prove that they ever agreed to J&J's Terms, including its Arbitration Agreement.

## THE APPLICABLE LAW

58.    There are two questions that must be answered when deciding whether a specific claim must be arbitrated: (1) is there an agreement to arbitrate between the parties ("formation") and, if so, (2) does the arbitration agreement apply to the specific claim being asserted ("arbitrability").

59.    The question of formation is therefore the threshold issue that is "for the Court to decide" because "[a]rbitration may be ordered only when the Court is satisfied that a contract has been formed." *Williams*, 417 F. Supp. 3d at 1239; *see also Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1248 (N.D. Cal. 2019) ("The issue of contract formation, however, is not a delegable gateway issue."); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("[A]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  court must resolve any challenge that an agreement to arbitrate was never formed,
2  even in the presence of a delegation clause.").[3]

3      60.    "State contract law governs the contract formation question." *Quamina*
4  *v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1037 (N.D. Cal. 2024).  Here, as noted
5  above, J&J is a California corporation with its principle place of business in San
6  Francisco, California, and the Claimants allege to all be California residents.
7  Further, Claimants have affirmatively asserted that "California law applies to all
8  claims." Therefore, California law applies.

9      **A.    <u>California Law on Contract Formation</u>**

10     61.    "California law is clear that there is no contract until there has been a
11  meeting of the minds on all material points." *Banner Ent., Inc. v. Superior Ct.*
12  *(Alchemy Filmworks, Inc.)*, 62 Cal. App. 4th 348, 357–58 (1998), as modified (Mar.
13  30, 1998).

14     62.    That is, "[t]he parties must mutually assent to a sufficiently definite
15  offer so that upon acceptance, the parties' obligations are reasonably certain."
16  *Chaganti v. I2 Phone Int'l, Inc.*, 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007), aff'd,
17  313 F. App'x 54 (9th Cir. 2009).

18     63.    Beyond that, where a contract "requires that acceptance be made in a
19  specified manner…, no other method of acceptance is effective." *Raposo, No.*
20  *A159146*, 2022 WL 4232551, at *3 (Cal. Ct. App. Sept. 14, 2022) (citing Civ.
21  Code, § 1582).

22     64.    In sum, under California law, for a contract to be formed, (1) the
23  parties must mutually agree on the material terms and (2) acceptance must conform
24  to the manner specified in the agreement.

25  _____
26  [3] The question of "arbitrability" can be delegated to the arbitrator to decide.  *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) ("Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator."); *Williams v. Eaze Sols.*, Inc., 417 F. Supp. 3d
27  1233, 1239 (N.D. Cal. 2019) ("[T]he parties may delegate questions of validity and scope to the arbitrator.").  That question, however, only arises where an actual
28  contract has been formed, which is not the case here.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## THE CASE OR CONTROVERSY

65.    Applying California contract law to the facts of this case, it is clear that the Terms are not a "contract" between Claimants and J&J, and, therefore, there is no agreement to arbitrate between Claimants and J&J.

66.    Like nearly all website terms of use, the Terms here were offered by J&J on a take-it-or-leave-it basis. Indeed, they had to be, given that it would be infeasible for J&J to negotiate the provisions of the Terms with every individual who visited the Site.  It is for that very reason that the Terms informed every user, including Claimants, that "[i]f [they] d[id] not want to agree to these Terms of Use,…*[they] must not access or use the [S]ite*." [**Exhibit C** (emphasis added)].

67.    As noted above, the Terms included an Arbitration Agreement.  They also "incorporated by reference" several other J&J agreements, including J&J's "Privacy Policy, which can be found at https://www.janieandjack.com/privacy-policy.html , (c) [J&J's] Shipping Policy, which can be found at https://www.janieandjack.com/shipping-information.html, and (d) [J&J's] Return Policy, which can be found at https://www.janieandjack.com/returns-policy.html[.]"

68.    The Terms instructed Site users who were willing to agree to the Terms what they must do to accept them: "us[e] the [S]ite" or "click[] to accept or agree to the Terms of Use when this option is made available[.]" [**Exhibit C**.]

A.    **Claimants' Arbitration Demands Demonstrate that There Was No Meeting of the Minds.**

69.    Since first notifying J&J of their alleged claims in the June 18, 2024 Letter, Claimants have made several admissions that show that they had no knowledge of the Terms at the time they visited the Site and, therefore, could not have "agreed" to them.

70.    **First**, in the June 18, 2024 Letter, Claimants stated that they "hereby consent to proceed with their claims pursuant to the arbitration process, applying California law as identified in [J&J's] Terms." [**Exhibit D**.]  They made a similar

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

statement in Exhibit A to their Arbitration Demands.  [**Exhibit G** ("Through this filing, Claimant confirms their consent to resolving Claimant's claims through arbitration with the American Arbitration Association ('AAA') pursuant to the Terms of Use ('Terms') posted on Respondent's website at the time the initial tracking activities occurred and claims accrued, while reserving all right to challenge unconscionable, unenforceable and/or unlawful provisions.").]

71.    Of course, had Claimants actually read, understood, and agreed to the Terms, they would have known that their act of "using the [S]ite" constituted their agreement, not anything they did thereafter.

72.    **Second,** in Exhibit A to the Arbitration Demands, Claimants stated that they "did not agree to any Privacy Policy of [J&J]" and never "provided their affirmative agreement to the terms of any such privacy policy before the tracking activity at issue began and claims accrued." [**Exhibit G**.]

73.    That claim, however, directly conflicts with their argument that they agreed to the Terms and its Arbitration Agreement, given that the Terms expressly state that J&J's Privacy Policy is "incorporated herein by reference" and that, by using the Site, Claimants "accept and agree to be bound and abide by…[J&J's] Privacy Policy, which can be found at https://www.janieandjack.com/privacy-policy."

74.    Claimants cannot have it both ways.  They cannot, on the one hand, engage in weaponized arbitration based on the Arbitration Agreement included in the Terms while, on the other hand, assert that they were unaware of and did not agree to any of the other provisions in the Terms.

75.    **Third**, Claimants state in Exhibit A of their Arbitration Demands that "[p]rior affirmative consent was not obtained by [J&J] prior to engaging in the tracking."

76.    In making this statement, Claimants demonstrate the flaw in their Arbitration Demands.  Either Claimants are stating that because the technology at

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

issue here started working the minute they visited the website, they could not have reviewed and consented to the Terms prior to the alleged "interceptions" occurring, or they are claiming that the Terms did not affirmatively disclose the presence of the technology. Either way, Claimants' Arbitration Demands fail.

77.     If Plaintiffs are stating the former, then they clearly could not have read, understood, and agreed to the Arbitration Agreement prior to their "causes of action" accruing.

78.     If Plaintiffs are stating the latter, then they clearly never read and agreed to the Terms because the Terms, via the incorporated-by-reference Privacy Policy, do disclose what is being collected and shared on the Site.

79.     For example, the Privacy Policy details the information being collected on the Site:

> When you access our [S]ite,…we collect several types of information from and about users of our [S]ite, depending on the context of your interactions with Us and the [S]ite ("Personal Information"), including information:
>
> a.     by which you may be personally identified, such as: name, e-mail address, telephone number, gender, ZIP code/postal code, or other additional information supplied by you, by which you may be contacted online or offline
>
> b.     necessary to process your payment if you make purchases, including payment details such as your payment instrument number (i.e., a credit card number), and the security code associated with your payment instrument, collected in connection with an order, a return, a promotion, contest, or fundraising event. All payment data is stored after tokenizing your account, or collected in connection with your shopping history with us, including the items you purchase);

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

c.      content you submit to our Platforms,
        including photos, videos, or reviews.
d.      aggregated information about people who
        visit and interact with our Social Media
        Pages. "Aggregated" means information that
        regards you but does not include your
        personal information or otherwise is
        specifically associated with you.
e.      If you call, email, text, or chat with our
        customer service agents, we may keep
        records of those conversations.

                            ****

The information we collect on or through our [S]ite may
include, but is not limited to:

a.      information that you provide by filling in
        forms on our [S]ite…;
b.      records and copies of your correspondence
        (including email addresses and related
        contact information) if you contact us;
c.      your responses to surveys that we might ask
        you to complete for research purposes;
d.      details of transactions you carry out through
        our [S]ite and of the fulfillment of your
        orders.  You may be required to provide
        financial information before placing an
        order through our [S]ite;
e.      your search queries on the [S]ite;
f.      information required to process a credit card
        transaction….

                            ****

As you navigate through and interact with our [S]ite, we
may use automatic data collection technologies to collect
certain information about your equipment, browsing
actions, and patterns, including:

a.      details of your visits to our [S]ite, including
        traffic data, location data, logs, and other

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY JUDGMENT

communication data, and the resources that
you access and use on the [S]ite; and

b.    information about your device and internet
connection, including your IP address,
operating system, and browser type.

80.    And the Privacy Policy details how the information is being collected
and to whom it is being shared:

We also contract with third party advertising,  analytics
companies or other service providers to perform certain
services on our behalf, such as online ads on other
websites, hosting the Platforms or Platform features,
delivering packages, processing credit card payments,
processing transactions and fulfilling orders, removing
repetitive information from customer lists, providing
customer service, providing website usage analytics,
providing search results and links (including paid listings
and links), providing targeted advertising, sending email,
direct mail or other communications, providing
marketing assistance and data analysis or enhancement,
or performing other administrative services.  These
companies use cookies or similar technologies to collect
information about your interactions with our Platforms
and interactions with other websites.  These advertising
companies may use and share the information gathered to
deliver ads more tailored to your interests.  We receive
aggregate information from these third parties to
understand our advertising effectiveness.  Any
information collected by us or by third parties through
the use of cookies or similar technologies may be linked
with other information we collect about you.  We may
give these service providers access to your information
(or allow them to collect information from or about you)
so that they can carry out the services they are
performing for you or for the Company.  These third
parties share information they have collected with us.
Your information may also be collected and processed by
third parties, such as the payment providers you select,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

who will process your information independently in
accordance with their own privacy notices…

81.    Given the breadth and detail with which J&J described its data
collection and sharing practices in its Privacy Policy, the only explanation for
Claimants not knowing these facts or not believing they had affirmatively agreed to
J&Js conduct is that ***they never read, understood, and agreed to the Terms***.

82.    And if they never read, understood, and agreed to the Terms, then they
did not have permission to be on the Site at all. [**Exhibit C** ("If you do not want to
agree to these Terms of Use, our Privacy Policy, Shipping Policy or Return Policy
***you must not access or use the Website***." (emphasis added))].

## CAUSES OF ACTION

### Count I: Declaratory Judgment of Non-Agreement

83.    J&J realleges the foregoing paragraphs as if fully set forth herein.

84.    Claimants, through their previously filed 2,408 Arbitration Demands
and through their recent threats to bring individual motions to compel 2,408
arbitrations, have engaged in and continue to engage in weaponized arbitration in
the hopes of leveraging an inflated settlement.

85.    As explained above, however, Claimants and J&J never reached a
meeting of the minds as to the Terms and, therefore, never agreed to arbitrate any
claims between them, let alone the claims being asserted by Claimants now.

86.    As a result of the acts described in the preceding paragraphs and the
astronomical fees associated with arbitrating and/or litigating the arbitration issue,
there exists a controversy of sufficient immediacy and reality to warrant the
issuance of a declaratory judgment.

87.    A judicial declaration is necessary and appropriate so that J&J may
ascertain its legal obligations vis-à-vis Claimant's individual claims.

88.    Additionally, J&J seeks injunctive and equitable relief as is necessary
to protect J&J from any steps taken by Claimants while this action is pending to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

either (1) reinitiate their arbitration demands or (2) compel their claims to arbitration.

## **PRAYER FOR RELIEF**

J&J prays for the following relief:

1.      A declaratory judgment that J&J has not formed an agreement, to arbitrate or otherwise, with Claimants;

2.      Preliminary and permanent injunctive relief that (a) restrains all Claimants, their employees, representatives, agents, and all persons or entities acting in concert with them during pendency of this action and thereafter perpetually from seeking to compel J&J to arbitrate any claim with the foregoing individuals; and

3.      Any other relief that the Court deems just and appropriate.


Dated:  February 24, 2025                    Respectfully submitted,


                                             BAKER & HOSTETLER LLP


                                             By: */s/ Sean P. Killeen*
                                                 Sean P. Killeen

                                             *Attorneys for Plaintiff*
                                             JANIE & JACK LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO